# UNITED STATES EX REL. GRIBBLE *v.* BALLINGER.

---

STATUTES; MANDAMUS; PUBLIC LANDS.

1. In the interpretation of a statute, all of its words are to be given effect, if reasonable.

2. An entry under the act of Congress of June 3, 1878 (20 Stat. at L. 89, chap. 151, U. S. Comp. Stat. 1901, p. 1545), commonly known as the "timber and stone act," is not covered by the proviso of sec. 7 of the act of Congress of March 3, 1891 (26 Stat. at L. 1099, chap. 561, U. S. Comp. Stat. 1901, p. 1521), providing "that after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him;" and accordingly the writ of mandamus will not lie on the relation of such an entryman to compel the Secretary of the Interior to issue to him a patent, although the entry was regular, and no contest of or protest against it was filed within two years thereafter.

No. 1981.    Submitted March 9, 1909.    Decided April 6, 1909.

HEARING on an appeal by the relators from a judgment of the Supreme Court of the District of Columbia overruling a demurrer to the return of a petition for the writ of mandamus, and, the relators electing to stand on the demurrer, dismissing the petition.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The relators, William Gribble and Menasha Wooden Ware Company, filed a petition for a writ of mandamus to compel James R. Garfield, then Secretary of the Interior, to issue a patent for 160 acres of land in the State of Idaho, claimed by virtue of an entry under the act of June 3, 1878, commonly called the "timber and stone act."

The petition alleged that William Gribble, who has since conveyed his interest to his corelator, made an application for entry of the land in strict compliance with all of the provisions of the law authorizing the same. That said land having been surveyed and entry approved, said Gribble paid to the proper officer of the Land Department in Cœur d'Alene District, Idaho, the required purchase price, namely, $300, and, on June 10,

1901, received from him the required certificate. That the proof and all of the papers relating to said entry and payment were duly transmitted to the Commissioner of the General Land Office. That no contest of, or protest against, said entry, was filed within two years thereafter, and it became the duty of the Secretary of the Interior to issue patent thereon as required by the law. The return of the Secretary to the rule to show cause admits the entry and payment aforesaid, and the receipt of the papers in the Land Office, but alleges that the application has not been finally acted upon by the Department. It further alleges that, on July 20, 1901, the local land officers were directed to cross-examine all applicants and their witnesses in timber and stone entries before issuing any receipts on the proof offered. That on November 20, 1901, a list of twelve such entries was sent to the local agents for investigation, but Gribble's entry was not included therein. On November 5, 1902, a further list was sent for the same purpose, which included Gribble's. The letter to the agent stated that there were no charges against such entries, but, as the testifying witnesses are the same in several instances, there is a suspicion of fraud about them which appears to require investigation. The agent was instructed that, if he found there was not sufficient evidence on which to base a charge of fraud that could be sustained, he should write a separate letter in each case and recommend that the entry be relieved from suspension. On May 29, 1903, a further notice was sent to said agent that the entry of Gribble and certain others would not go to patent until claimants and witnesses had been cross-examined, and he was directed to proceed with such examination and make a separate report in each case. That on November 2, 1903, a special report was made on the entry of Gribble. (This report is not given in the answer, and is referred to as attached to the same, but it is not copied in the record.) That the action taken on November 5, 1902, was a suspension of said entry, which was continued in force on May 29, 1903. The answer concludes thus: "Respondent further advises the court that, since the investigation ordered and the report of the special agent upon this entry, the officers

of the Land Department have been unable to locate the relator, William Gribble, to make service upon him of the charges to be preferred against said entry, to the end that the opportunity might be afforded him to develop the exact state of facts respecting his purchase and alleged sale of this land to relator, the Menasha Wooden Ware Company."

The relators demurred to this return. This was overruled, and, electing to stand on their demurrer, the petition was dis missed.

The appellee, James R. Garfield, having retired from the office of Secretary of the Interior, the present Secretary, Richard A. Ballinger, has been made a party in his stead, and the docket entry has been changed to conform thereto.

*Mr. John M. Rankin* for the appellants.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, *Mr. Stuart McNamara,* Assistant, *Mr. George W. Woodruff,* Assistant Attorney General, and *Mr. F. W. Clements,* First Assistant Attorney, Interior Department, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It is admitted, as we have seen, that the entry of the relator, Gribble, was made in due compliance with the statute, and that no formal contest or protest against the validity of the entry has been filed by any person, unless the action of the Secretary in suspending action until an investigation can be made is equivalent thereto. The right to the patent is founded on the proviso of sec. 7 of an act to repeal timber culture laws, and for other purposes, approved March 3, 1891, which reads as follows:

"That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber-culture, desert-land, or pre-emption laws, or under this act, and when there shall be

no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him." 26 Stat. at L. 1099, chap. 561, U. S. Comp. Stat. 1901, p. 1521.

The contention on behalf of the relators is that there had been no contest, or protest against the validity of the entry, within the contemplation of this proviso; that the right to the patent thereon became absolute upon the expiration of two years after the certificate was issued; and that thereafter it became the plain ministerial duty of the Secretary to issue the same upon demand.

It is first necessary to determine whether entries under the timber and stone act are covered by the proviso. This depends upon the signification of the word "pre-emption," as used therein. In its generic sense, pre-emption may include not only this entry, but those also made under the homestead, timber-culture, desert-land, and other laws providing for the disposition of public lands, where the right to purchase, under certain conditions, in preference to others, is conferred. By entry in compliance with the law governing the same the land is, in each case, pre-empted.

In a specific sense and by common usage pre-emption laws meant the early laws relating to the disposition of the public lands, enacted years before the timber-culture, desert-land, and timber and stone acts. If the word was intended to be used in the generic sense in the proviso, there was no occasion whatever for preceding it with the particular recital of entries under the homestead, timber-culture, and desert-land laws. As entries under those laws constitute pre-emptions in the broad sense of the word, their recital would be of no effect unless the word be given its limited signification. And, as all the words of a statute are to be given effect, if reasonable, in its construction, the special recital would seem to indicate that Congress intended that pre-emption should have this restricted meaning. Under the laws recited, either actual settlement and residence, or the actual expenditure of labor and money in improvements upon the land so pre-empted, is required. In all such cases, inspec-

tion could be made at any time, and would necessarily show whether the law had been complied with. Under a timber and stone entry, on the other hand, the purchaser is not required to occupy the land or improve the same. He is required to do nothing beyond making the entry and paying the purchase money. Frauds perpetrated in such entries would necessarily be more difficult to detect than in the others. This would reasonably account for an intention to limit the scope of the proviso to the technical pre-emptions and those of the other classes specifically named.

This construction is confirmed by the language of sec. 4 of the act of March 3, 1891 (26 Stat. at L. 1097, chap. 561, U. S. Comp. Stat. 1901, p. 1388). That section repeals chapter 4 of title 32, Rev. Stat., U. S. Comp. Stat. 1901, p. 1379, which relates to pre-emptions (excepting several sections of the same), and "all other laws allowing pre-emptions of the public lands of the United States."

Giving the word as herein used the broad signification claimed for it in sec. 7, for which there is, at least, as strong a reason, there would be an express repeal of the timber and stone law under which relators' entry was long thereafter made.

The repealing clause excepted all such bona fide pre-emption entries as may have been initiated before its date, and provided for their perfection. It was to such entries as well as those under the laws mentioned that the proviso of sec. 7 was intended to apply. As the proviso does not extend to the entry under consideration, the Secretary is under no duty to issue the patent which a court can enforce. It is unimportant to consider any other question that has been argued. The judgment must be affirmed with costs.                              *Affirmed.*